**WESTERN PROPERTIES, Plaintiff, Appellant, and Cross–Respondent,**

v.

**SOUTHERN UTAH AVIATION, INC.; Burton K. Nichols; Earl Gilmore; Dan Borgen; and Earl Meyer, Defendants, Respondents and Cross–Appellants.**

No. 880349–CA.

Court of Appeals of Utah.

June 21, 1989.

Floyd W. Holm, Cedar City, for plaintiff, appellant, and cross-respondent.

Michael W. Park, Cedar City, for defendants, respondents, and cross-appellants.

Before CONDER,[1] GARFF and GREENWOOD, JJ.

DEAN E. CONDER, Judge:

The trial court granted partial summary judgment in this case, awarding plaintiff Western Properties rent accrued to June 27, 1986, from which the defendants appeal. Western Properties appeals from the final judgment dismissing its claims for additional rent and for breach of a lease covenant regarding construction of a building. We affirm both the partial summary judgment and the final judgment.

Western Properties leased from Cedar City certain vacant land at the Cedar City Airport. Western Properties in turn subleased part of the land to the defendants for a 15-year term beginning March 6, 1985, with a covenant that the defendants "shall construct on the premises a maintenance building," which, upon termination of the sublease, was to have become property of Western Properties. In July of 1985, Cedar City approved the sublease in an addendum to it.

The defendants thereafter applied to Cedar City for site plan approval for the maintenance building, but as of the time of trial had not obtained such approval from Cedar City. Cedar City had also not approved a master plan for the airport as a whole. The defendants defaulted in payment of rent and abandoned the subleased land on June 27, 1986, without ever constructing a maintenance building on the land.

Western Properties sued for unpaid rent and the value of the maintenance building that it was to have received following the 15-year term of the sublease. The trial court granted partial summary judgment and awarded rent accrued to the date of abandonment, but reserved issues of further damages. Later, following trial, the trial court dismissed Western Properties'

---

1. Dean E. Conder, Senior District Judge, sitting by special appointment pursuant to Utah Code Ann. § 78-3-24(1)(j) (1987).

**658**

claims for further rent and for the residual income value of the maintenance building, and from that dismissal Western Properties appeals. The defendants have cross-appealed from the earlier summary judgment, arguing that a factual question concerning the intention of an individual defendant to be bound by the sublease precluded summary judgment.

## Contract Formation

We turn first to the question of contract formation raised in the cross-appeal. Burton Nichols, one of the individual defendants, admitted signing the sublease in a personal capacity, but averred that he did not recall the act of signing or that the signature page was attached to the sublease. Nichols further stated that he was "unaware that the sublease was being drafted to designate me as part of the [sub]lessee," and that he did not agree to be a sublessee. Execution of the sublease by Nichols is nevertheless admitted, and there is no claim of fraud or overreaching or any indication that Western Properties stood in a fiduciary relation to Nichols.

■ In such circumstances, a signatory cannot, with hindsight, claim ignorance of the contract and thereby escape liability. "One party to a contract does not have a duty to ensure that the other has a complete and accurate understanding of all terms embodied in a written contract. Each party has the burden to understand the terms of a contract before he affixes his signature to it and may not thereafter assert his ignorance as a defense."[2] We therefore conclude that Nichols is bound by

the sublease, regardless of whether he read or understood the full import of what he signed.

Since the execution of the sublease has not otherwise been called into question, we conclude that the sublease formed a contract between the parties incorporating promises for payment of rent and for construction of a maintenance building. The breach of those promises is not in dispute. We therefore turn to a consideration of potential defenses forestalling liability for the breach.

## Impossibility and Frustration

■ The trial court based its post-trial judgment on grounds of impossibility. Under the contractual defense of impossibility, an obligation is deemed discharged if an unforeseen event occurs after formation of the contract[3] and without fault of the obligated party, which event makes performance of the obligation impossible or highly impracticable.[4] The rationale for this rule is founded on principles of assent and basic equity. Parties are ordinarily thought to have made certain assumptions in visualizing their agreement, and those assumptions comprise part of the basis and extent of their assent. The impossibility defense serves to prevent enforcement where those assumptions, and hence, the parties assent, prove to be faulty.

■ In this case, the parties appear to have tacitly assumed that the City would cooperate in the development of the leased land. The lease makes no provision for the prospect that the City would not approve the development. In the absence of any

2. *Resource Management Co. v. Weston Ranch and Livestock Co.,* 706 P.2d 1028, 1047 (Utah 1985) (citation omitted) *see, Garff Realty Co. v. Better Buildings, Inc.,* 120 Utah 344, 234 P.2d 842, 844 (1951).

3. The requirement that the event occur after formation of the contract distinguishes a case of supervening impossibility, such as this, from a case in which the contract cannot be performed because of a mistake, an unknown legal requirement, or other fact in existence at the time the contract is made. *See Quagliana v. Exquisite Home Builders, Inc.,* 538 P.2d 301, 305–08 (Utah 1975); *Sine v. Rudy,* 27 Utah 2d 67, 493 P.2d 299 (1972); *Mooney v. GR and Assoc.,* 746 P.2d 1174, 1176 (Utah App.1987).

4. *See Holmgren v. Utah–Idaho Sugar Co.,* 582 P.2d 856, 861 (Utah 1978) ("[A] party may be relieved of performing an obligation under a contract where supervening events, unforeseeable at the time the contract is made, render performance of the contract impossible"; the defense did not prevail because evidence was insufficient); *Transatlantic Fin. Corp. v. United States,* 363 F.2d 312, 315 (D.C.Cir.1966); Restatement (Second) of Contracts section 261; J. Calimari & J. Perillo, *Contracts,* 476 *et seq.* (2d ed. 1977); Utah Code Ann. § 70A–2–615(a) (1980) establishes the impossibility defense in contracts for the sale of goods.

contractual allocation of the risk of the City's non-cooperation, the failure of the City to approve development of the land is an eventuality sufficiently unforeseen [5] for application of the impossibility defense.

The other facts required for application of the impossibility defense appear to have been sufficiently established at trial. The district court found that the defendants "could not build the maintenance building without city approval and the city did not ever give its approval." There appears to be no factual basis for implicating the defendants in the failure of the City to approve, and the defendants seem to have made every effort that could reasonably be required in order to induce the City to give its approval. In the absence of facts which could indicate fault or a lack of diligence on the part of the defendants, we rely on the trial court's findings in concluding that performance of the defendants' obligations was indeed impossible through no fault of their own. We therefore treat the obligation to construct the maintenance building as discharged from the time when performance of their obligations became impossible.[6]

 Construction of the promised building was impossible, but occupancy of the land pursuant to the lease was not necessarily precluded by the inability to construct the building. The land was, however, wholly undeveloped and uncultivated. Without a way of productively using the land, the purpose of the leasehold was effectively frustrated. Frustration of purpose differs from the defense of impossibility only in that performance of the promise, rather than being impossible or impracticable, is instead pointless.[7] There was no point in leasing this land once its development became impossible. The covenant to pay rent is therefore also discharged, effective as of June 27, 1986.[8]

The judgment is affirmed.

GARFF and GREENWOOD, JJ., concur.

---

5. We recognize that the City's failure to approve seems, from our present perspective, to be rather easy to foresee. However, the critical fact is not whether the event *could* have been foreseen, but rather, whether the parties *actually did* foresee it and provide accordingly in their contract. A dictum in one Utah case on impossibility employs the word "unforeseeable" in describing the event causing impossibility, *Holmgren v. Utah–Idaho Sugar Co.*, 582 P.2d at 861 (Utah 1978); however, the better and more widely accepted rule looks not to whether the parties could or should have foreseen the event, but rather whether, as a fact of assent, they did foresee it. Restatement (Second) of Contracts § 261 & comment b (1981).

6. The trial court made no finding expressly determining when performance became impossible; however, since the parties do not contest the matter of timing, we presume the trial court's decision to be correct in this regard. We

therefore do not consider whether the award of rent for the period preceding abandonment was erroneous, because the cross-appeal of that award is based solely on the argument that Nichols erred in executing the lease, an argument which we rejected above.

7. *See, Castagno v. Church*, 552 P.2d 1282 (Utah 1976); Restatement (Second) of Contracts § 265 (1981); J. Calimari & J. Perillo, *Contracts*, 495–96 (2d ed. 1977).

8. We distinguish *Jespersen v. Deseret News Publishing Co.*, 119 Utah 235, 225 P.2d 1050 (1951) and *General Ins. Co. of America v. Christiansen Furniture Co.*, 119 Utah 470, 229 P.2d 298 (1951) because they are based on an argument not raised below or in this court. At common law, the application of the usual contract defenses to a covenant to pay rent was limited. We do not reach the question whether this rule could apply in this case, because it has not been argued.