**STATE of Utah, Plaintiff and Appellee,**

v.

**Diane Marie NELSON, Defendant and Appellant.**

**No. 970163–CA.**

Court of Appeals of Utah.

Dec. 26, 1997.

Rebecca C. Hyde and Richard P. Mauro, Salt Lake City, for Defendant and Appellant.

Jan Graham and Marian Decker, Salt Lake City, for Plaintiff and Appellee.

Before WILKINS, Associate P.J., and BENCH and GREENWOOD, JJ.

## OPINION

**WILKINS, Associate Presiding Judge:**

Defendant Diane Marie Nelson appeals her conviction for aggravated robbery, a first degree felony in violation of Utah Code Ann. § 76–6–302 (1995). Specifically, defendant challenges the trial court's denial of her motion to suppress eyewitness identification and argues the evidence is insufficient to support the charge of aggravated robbery. We vacate the conviction and remand for a new trial.

## BACKGROUND

On July 1, 1996, at approximately 10:00 p.m., Amy Brown parked her truck in the vicinity of 300 West and 300 South in Salt Lake City. Brown stated that, at the time, "it was pretty dark outside," but there were some scattered street lights in the area. While walking to her apartment a "few feet" away, Brown passed a woman and two men standing by a dumpster on the southeast corner of her apartment complex. When Brown came within five to six feet of the threesome, the woman commented on Brown's shoes, stating, "nice shoes" and "I like your shoes." Brown ignored her and kept walking. As Brown passed them, she looked out of the corner of her eye and heard the woman say, "I want those shoes." Brown continued walking, ignoring them. Then in a more demanding tone, the woman said, "Get them for me." One of the men then pulled a knife from behind his back, pointed it at Brown, and said, "Give her the shoes." Because she was so frightened, Brown ran towards her apartment and did not look back. The man followed for some distance and then ran off towards Pioneer Park. When Brown reached her apartment, she ran in and called 911.

About fifteen to twenty minutes later, police arrived at Brown's apartment. Brown could not calm down and was, as she described, "very hysterical." Brown described the incident to the officers, stating that the entire incident lasted about thirty seconds. Although Brown said that she paid more attention to the men than to the woman, she described the woman as "black," with curly black hair, standing about five feet six inches tall, "nicely dressed ... not wearing shorts or anything like that," but wearing pants and a shirt. Brown provided no other informa-

tion. Based only on that description, the police left to search the area. About ten to twenty minutes later, the police returned and asked Brown to identify a woman, defendant. Defendant is African–American, with black curly hair, and is five feet two inches tall.

Police presented defendant to Brown for identification a few feet outside of Brown's apartment. Defendant was the only woman presented for identification. She was hand-cuffed, surrounded by police, placed next to a patrol car, and her face illuminated by a flashlight. Upon seeing defendant, Brown became very "hysterical." Brown, who is Caucasian, identified defendant as the woman by the dumpster. As defendant was taken to jail, defendant stated, "I didn't do anything. I didn't do anything. Maybe Cody or Brad did something, but I didn't do anything."

Before trial, defendant filed a motion to suppress the eyewitness identification as unreliable under both the Utah and Federal Constitutions. At the suppression hearing, defendant was prepared to proffer expert testimony regarding the reliability of eyewitness identification. The expert was prepared to testify regarding factors affecting the three stages of identification: acquisition, retention, and recall. Defendant intended to show that under the circumstances of this case—Brown's stress, the fast-moving, thirty-second encounter in which Brown admittedly "ignored" the woman by the dumpster, her admitted focus on the man with the weapon, the lack of lighting, and the problems associated with cross-racial identification—Brown's acquisition of the information was questionable. Further, defendant argued, because of the weak acquisition of information, Brown's memory could have been easily influenced by suggestion, which would lead to misidentification. The trial court stated that the eyewitness identification was a jury issue of "reliability" and therefore

denied the motion. Defendant again requested the trial court consider the evidence proffered by the expert, but the trial court stated that the motion was denied regardless of the expert's opinion. The trial court made no factual findings and made no legal determination as to the constitutional reliability of the eyewitness identification.

The trial court admitted the eyewitness identification testimony, along with the expert's testimony, and gave to the jury defendant's requested jury instruction addressing the limitations of eyewitness identification as required by *State v. Long*, 721 P.2d 483 (Utah 1986). The jury found defendant guilty of aggravated robbery, a first degree felony under Utah Code Ann. § 76-6-302 (1995). Defendant was sentenced to serve a five-to-life term of imprisonment and pay a $10,000 fine. The sentence was stayed and a three-year probationary term imposed. Defendant appeals her conviction.

### ANALYSIS

■ Defendant challenges her conviction on two grounds. First, defendant argues the trial court's failure to make findings of fact and failure to perform the required constitutional reliability analysis before admitting the eyewitness identification violated her due process rights under the Utah Constitution.[1] Second, defendant argues insufficient evidence exists to support the conviction for aggravated robbery under section 76-6-302.

■ Defendant argues that the trial court violated her due process rights under article 1, section 7 of the Utah Constitution by admitting eyewitness identification testimony without making any factual findings and without making a preliminary determination as to the constitutional reliability of the identification as required under *State v. Ramirez*, 817 P.2d 774 (Utah 1991). Whether a trial

---

1. Defendant also challenges the admissibility of the eyewitness identification under the Due Process Clause of the United States Constitution. Defendant correctly notes that Utah's due process analysis pertaining to the constitutional reliability of eyewitness testimony is different than, but "as stringent as, if not more stringent than, the federal analysis." *State v. Ramirez*, 817 P.2d 774, 784 (Utah 1991). Because eyewitness testimony admissible under the Utah analysis is admissible under the federal standard, we need not separately analyze the reliability of Brown's eyewitness testimony under the federal constitution. We note, however, that our conclusion would be no different under the Fourteenth Amendment analysis. *See State v. Perry*, 899 P.2d 1232, 1236 (Utah Ct.App.1995).

court is required to make findings of fact and legally determine the reliability of an eyewitness identification before admitting such testimony is a question of law, which we review for correctness. *See State v. Pena,* 869 P.2d 932, 936 (Utah 1994).

In *Ramirez,* the Utah Supreme Court outlined both the procedure to be followed and the factors to be considered by trial courts in determining the reliability of eyewitness testimony under the Due Process Clause of the Utah Constitution. *See* 817 P.2d at 778–84. In discussing the proper procedure, the *Ramirez* court provided a broad overview of the law surrounding the admission of eyewitness identifications, including a clear discussion of the separate and distinct roles of the prosecutor, the judge, and the jury. According to *Ramirez,* the prosecutor carries the initial burden of demonstrating the admissibility of eyewitness testimony by laying the foundation upon which the trial court can make any necessary preliminary factual findings and reach any necessary legal conclusions. *See id.* at 778. The judge, "as arbiter of the constitutional admissibility of an identification," is required to scrutinize proffered evidence for constitutional defects. *See id.* A judge presented with the issue of the admissibility of an eyewitness identification must preliminarily determine whether the identification is sufficiently reliable that its admission and consideration by the jury will not deny the defendant due process. *See id.* Once admitted, the jury determines the weight to credit such evidence and is the ultimate finder of fact. *See id.*

In discussing the roles of the judge and jury, the *Ramirez* court was particularly concerned about the "[p]otential for role confusion and for erosion of constitutional guarantees inhere[nt] in th[e] overlap of responsibility of judge and jury." *Id.* In distinguishing the roles of the judge and jury, the court stated that the judge must initially determine whether the identification is sufficiently reliable to be admitted into evidence; if reliable and therefore admissible, the jury determines the credibility of that identification. *See id.*

[C]ourts cannot properly sidestep their responsibility to perform the required consti-

tutional admissibility analysis. To do so would leave protection of constitutional rights to the whim of a jury and would abandon the courts' responsibility to apply the law.

*Id.* Therefore, under *Ramirez,* the trial court must initially determine whether eyewitness testimony is constitutionally reliable before it can be admitted.

In determining whether an identification is reliable, the court must consider "all the circumstances" surrounding the identification and appraise those circumstances in light of five factors. *Id.* at 779. Based on federal case law, *see Manson v. Brathwaite,* 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977); *Neil v. Biggers,* 409 U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972), and the Utah Supreme Court's decision in *State v. Long,* 721 P.2d 483, 493 (Utah 1986), the *Ramirez* court established a separate, more indepth due process analysis of the reliability of eyewitness identifications under the Utah Constitution. In determining reliability, a court must consider these pertinent factors:

(1) [T]he opportunity of the witness to view the actor during the event; (2) the witness's degree of attention to the actor at the time of the event; (3) the witness's capacity to observe the event, including his or her physical and mental acuity; (4) whether the witness's identification was made spontaneously and remained consistent thereafter, or whether it was the product of suggestion; and (5) the nature of the event being observed and the likelihood that the witness would perceive, remember and relate it correctly. This last area includes such factors as whether the event was an ordinary one in the mind of the observer during the time it was observed, and whether the race of the actor was the same as the observer's.

*Ramirez,* 817 P.2d at 781 (quoting *Long,* 721 P.2d at 493). If the court finds the identification reliable in light of these five factors, then it is admissible under the Due Process Clause of the Utah Constitution.

■ In this case, the suppression hearing record shows that the trial court did not make findings as required by Rule 12 of the

Utah Rules of Criminal Procedure,[2] did not consider any of the circumstances surrounding the identification in light of the *Ramirez* factors, and did not make a preliminary determination of reliability. In denying defendant's motion to suppress the eyewitness identification, the trial court stated: "[U]nless there's something unusual here, it's an issue of fact as to whether or not the eyewitness is reliable.... So what I'd be inclined to do is let it go to the jury, and not suppress the identification." Here, the trial court sidestepped its gatekeeping responsibility by failing to determine the constitutional admissibility of the eyewitness identification testimony. The court failed to "scrutinize proffered evidence for constitutional defects," *Ramirez*, 817 P.2d at 778, and instead "abdicate[d] this responsibility by de facto leaving the question to the jury," *id.* at 787.

■ The State, however, argues defendant waived this argument by failing to specifically request that the trial court make such findings and perform the required *Ramirez* analysis. *See State v. Olsen*, 860 P.2d 332, 336 (Utah 1993) (holding defendant's failure to object to admission of eyewitness testimony at trial waived argument on appeal). The record shows defendant did in fact make such a request and was prepared to show the unreliability of Brown's eyewitness identification. The court, however, denied the motion and stated that if defendant wanted to present the expert she could, but the decision was made. We will not require defendant to challenge the trial court's determination again after making its ruling.

In addition, the State urges this court to assume the trial court found facts consistent with its decision to admit the eyewitness testimony and perform the required analysis. We acknowledge that this court may assume the trial court made findings in accord with its decision, if it would be reasonable to assume the trial court made those findings. *See Ramirez*, 817 P.2d at 787; *cf. State v.*

*Robertson*, 932 P.2d 1219, 1224–25 (Utah 1997) (discussing three circumstances in which it would be unreasonable to assume trial court made findings, e.g., ambiguous facts or an explicit mandate by statute or case law that such findings be made). However, in this case, it would be unreasonable for this court to assume any findings were actually made where the trial court did not consider any evidence, did not discuss the reliability factors, and made no explicit determination of reliability. To assume the facts and perform the reliability analysis on appeal would eviscerate the *Ramirez* holding requiring that trial courts, as gatekeepers, make the initial determination as to admissibility.

■ The trial court's failure to make any findings and failure to make any legal determination as to the constitutional admissibility of the eyewitness identification testimony was error. *Cf. Ramirez*, 817 P.2d at 788–89 (holding trial court's failure to address constitutional admissibility of evidence obtained as result of alleged illegal search and seizure erroneous, requiring court to vacate sentence and remand for new trial). Further, this error was harmful because defendant was convicted primarily upon the testimony of the sole eyewitness, Brown. Absent Brown's identification, the State would have had no case against defendant. Thus, there is "a reasonable likelihood of a more favorable result had the identification not been admitted." *Id.* However, "[t]o ask the trial court to address the admissibility question now would ... tempt it to reach a post hoc rationalization for the admission of this pivotal evidence." *Id.* at 789. Therefore, we vacate the conviction and remand for a new trial.[3]

## CONCLUSION

We hold that when presented with the issue of the constitutional admissibility of eyewitness identification testimony, a trial

---

2. Rule 12(c) of the Utah Rules of Criminal Procedure provides: "A motion made before trial shall be determined before trial unless the court for good cause orders that the ruling be deferred for later determination. Where factual issues are

involved in determining a motion, the court shall state its findings on the record."

3. Based on our conclusion, we need not address defendant's sufficiency of the evidence argument.

court must resolve factual disputes, consider the *Ramirez* reliability factors, and legally determine whether the eyewitness identification is reliable. In this case, the trial court erred in failing to make any findings, failing to consider all the circumstances surrounding the identification in light of the *Ramirez* factors, and failing to determine initially whether Brown's eyewitness identification was reliable.

Defendant's conviction is vacated, and we remand for a new trial in accordance with this opinion.

BENCH and GREENWOOD, JJ., concur.