2010 UT App 96

**Michael S. ROBINSON, Petitioner and Appellant,**

v.

**Debra J. ROBINSON, Respondent and Appellee.**

**No. 20090082–CA.**

Court of Appeals of Utah.

April 22, 2010.

Stephen T. Hard, Holladay, for Appellant.

Dean C. Andreasen and Sarah L. Campbell, Salt Lake City, for Appellee.

Before Judges DAVIS, ORME, and VOROS.

## OPINION

DAVIS, Presiding Judge:

¶ 1 Petitioner Michael S. Robinson (Husband) appeals the Decree of Divorce finalizing his divorce from Respondent Debra J. Robinson (Wife). Husband argues that the district court erred, in several respects, by enforcing a stipulation between the parties. We affirm.

## BACKGROUND

¶ 2 During Husband and Wife's marriage, they acquired many pieces of income-producing real property, including condominiums, vacant land, and strip malls. The most valuable of these pieces of property was a strip mall in southern Utah (the plaza). After Husband filed for divorce in February 2007, the parties, over the course of several months, discussed their differing views as to how they should divide the various properties in which they had an interest.

¶ 3 On November 2, 2007, Husband and Wife attended formal mediation, at which they were each represented by counsel. At the mediation, the parties finally resolved the property division issues and signed a Stipulation and Property Settlement Agreement (the stipulation). The stipulation calculated Wife's share of various assets to be approximately $1.78 million, awarded the plaza to Husband, and provided that Husband would refinance the mortgage on the plaza so as to pay Wife the $1.78 million. The parties stipulated that the fair market value of the plaza was $7.25 million. The stipulation also provided that Husband would file a loan application within fifteen days and that Wife would provide information necessary to assist Husband in preparing the application.

¶ 4 Husband not only failed to apply for a loan within the fifteen days provided for in the stipulation, but he at no time thereafter made such an application. In February 2008, Wife moved for entry of a divorce decree based on the stipulation. Husband thereafter filed motions to set aside the stipulation, arguing that his performance under the stipulation was excused because due to the parties' mistaken assumptions regarding the status of the plaza's leases, it was impos-

sible for him to secure the contemplated loan on the plaza.

¶ 5 Based upon affidavits and proffered testimony, the commissioner recommended that the stipulation be enforced. The commissioner reasoned, "[I]t's clear to me that the deal was reached in a fair fashion, and it represented the parties' agreement at the time." The district court then, without complying with Husband's request for an evidentiary hearing, accepted the commissioner's recommendations and entered the decree of divorce incorporating the provisions of the stipulation.

## ISSUES AND STANDARD OF REVIEW

¶ 6 Husband argues that his performance under the stipulation should have been excused under the contractual defenses of mutual mistake and impossibility. Whether such defenses should have afforded Husband relief under the facts as he argues them is a question of law that we review for correctness. *See American Towers Owners Ass'n v. CCI Mech., Inc.*, 930 P.2d 1182, 1185 (Utah 1996).

¶ 7 Husband next argues that in order to enforce the stipulation, the district court was obliged to make a specific determination that the stipulation represented a fair and equitable division of the parties' property. Whether the district court made the necessary factual findings to support its determination is a question of law that we review for correctness. *Cf. State v. Nelson*, 950 P.2d 940, 942–43 (Utah Ct.App.1997).

¶ 8 Husband also argues that the district court violated his due process rights when it failed to hold an evidentiary hearing before enforcing the stipulation and entering the decree of divorce. "Constitutional issues, including questions regarding due process, are questions of law that we review for cor-

rectness." *Chen v. Stewart*, 2004 UT 82, ¶ 25, 100 P.3d 1177.

## ANALYSIS

### I. Contractual Defenses

¶ 9 Husband argues that the district court erred in failing to grant relief under two contractual defenses. Because neither of these defenses was applicable to the facts of this case, we conclude that the district court did not err in this regard.

### A. Mutual Mistake

¶ 10 Husband alleges that he should have been relieved from performance under the stipulation because of the contractual defense of mutual mistake.[1]

> "A party may rescind a contract when, at the time the contract is made, the parties make a mutual mistake about a material fact, the existence of which is a basic assumption of the contract. If the parties harbor only mistaken expectations as to the course of future events and their assumptions as to facts existing at the time of the contract are correct, rescission is not proper."

*Deep Creek Ranch, LLC v. Utah State Armory Bd.*, 2008 UT 3, ¶ 17, 178 P.3d 886 (quoting *Mooney v. GR & Assocs.*, 746 P.2d 1174, 1178 (Utah Ct.App.1987)). The mistaken assumptions to which Husband points are regarding the money that the plaza "would generate"; the vacancy rate that "would" exist; the value the plaza "would have"; that the leases "would be" sufficient to secure a new loan or else the existing tenants "would re-sign extensions"; and that Husband "would be able to" refinance the plaza. These assumptions are simply expectations as to future events—that those events would not vary significantly from the current state of events—and therefore do not support the contractual defense of mutual mistake. As

---

1. In making his argument for mutual mistake, Husband places some reliance on the case of *Kendall Insurance, Inc. v. R & R Group, Inc.*, 2008 UT App 235, 189 P.3d 114. But the lead opinion in that case is that of only one judge because the second judge concurred only in the result—without elaboration—and the third judge dissented. Thus, the opinion relied on is not

binding as precedent, as it would be had at least two judges joined the opinion. *See generally State v. Thurman*, 846 P.2d 1256, 1269 (Utah 1993) (quoting authority stating that " 'a decision of a panel constitutes a decision of the court and carries the weight of stare decisis in a subsequent case before the same or different panel' ").

to the current status of the leases and the income of the plaza—the amounts from which the plaza's value was calculated[2]— Husband was well aware of those figures. Indeed, the evidence Husband offers to show that the parties were mistaken as to the value of the plaza speaks only to the value of the plaza *after* events unfolded regarding the expiring leases. Husband sets forth no evidence that *at the time the stipulation was signed* the plaza was not worth the value the parties attributed to it.

 ¶ 11 Further, even had Husband, as he alleges, made a mistake in his valuation due to inadequate information, his argument would still be unavailing because "[u]nder contract law, a party may not rescind an agreement based on mutual mistake where that party bears the risk of mistake." *State v. Patience*, 944 P.2d 381, 387–88 (Utah Ct. App.1997) (citing 17A Am. Jur. 2d *Contracts* § 215 (1991)). "A party bears the risk of a mistake when ... he is aware, at the time the contract is made, that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient...." Restatement (Second) of Contracts § 154 (1981); *see also Klas v. Van Wagoner*, 829 P.2d 135, 141 n. 8 (Utah Ct.App.1992) (applying the above rule from the restatement). Thus, if Husband did not feel that the information upon which he relied was sufficient, he should have either insisted on any information he felt he needed before he entered into the stipulation or modified the terms of the stipulation accordingly. But as the commissioner recognized, Husband took no such steps to avoid the risk associated with inadequate information:

> To the extent [Husband] relied upon [Wife]'s handwritten analysis or any other verbal representations that she made, [Husband] chose to rely upon those representations and he chose not to include any of those representations in the [stipulation], to make any reference to them whatsoever, or to include them as pre-conditions.

The commissioner determined that, instead, Husband was simply asking for the deal to be fair "in hindsight," which is not a ground for rescission, *see Blackhurst v. Transamerica Ins. Co.*, 699 P.2d 688, 692 (Utah 1985) (stating that an appellate court "will not nullify a settlement contract because one of the parties would have acted differently if all the future outcomes had been known at the time of agreement"). Thus, the defense of mutual mistake does not provide relief under the facts of this case.

**B. Impossibility**

 ¶ 12 Husband also argues that his performance under the stipulation should have been excused due to the impossibility of such performance. "Under the contractual defense of impossibility, an obligation is deemed discharged if an *unforeseen* event occurs *after formation of the contract* and without fault of the obligated party, which event makes performance of the obligation impossible or highly impracticable." *Western Props. v. Southern Utah Aviation, Inc.*, 776 P.2d 656, 658 (Utah Ct.App.1989) (emphases added) (footnote omitted); *see also* Restatement (Second) of Contracts § 266(1) (1981) ("Where, at the time a contract is made, a party's performance under it is impracticable without his fault because of a fact *of which he has no reason to know* and the non-existence of which is a basic assumption on which the contract is made, no duty to render that performance arises, unless the language or circumstances indicate the contrary." (emphasis added)). This defense is wholly inapplicable here because Husband alleges no unforeseen event occurring after the stipulation was signed in November 2007 that altered the possibility of performance. *See generally Western Props.*, 776 P.2d at 658 n. 3 ("The requirement that the event occur after formation of the contract distinguishes a case of supervening impossibility ... from a case in which the contract cannot be performed because of a mistake, an unknown legal requirement, or other fact in existence at the time the contract is made.").

**2.** Interestingly, although the parties agreed on a fair market value for the plaza, they did not agree as to the underlying amounts on which such a calculation is typically based. For example, although the parties knew that the property was fully occupied at the time of the stipulation, they could not agree on whether to use a vacancy rate of three percent or five percent.

Instead, Husband argues in his brief that *at no point* could he have obtained a loan "given the state of the leases in November 2007, January 2008, or anytime thereafter."[3] Thus, without any later-occurring event rendering performance impossible or highly impracticable, Husband's argument of impossibility is unavailing and the district court did not err in failing to address the issue.[4]

## II. Fair and Equitable Division of Property

■ ¶ 13 Husband next argues that the district court erred in failing to make a determination that the division of assets contained in the stipulation was fair and reasonable. But the district court did discuss whether the division of the properties was equitable:

> The Court finds that the parties represent that prior to the execution of the [stipulation] they have each reviewed and discussed its terms with their respective counsel, if deemed necessary, and that the same represents a fair and equitable distribution of the assets acquired and liabilities incurred by the parties.

We do, however, recognize that this finding is somewhat ambiguous in that it could have been relating that *the parties* determined the division to be equitable, as opposed to the district court having made such a determination.[5] Nonetheless, we are unconvinced that further findings are necessary in this case. Husband correctly asserts that a stipulation dividing property between divorcing parties should be adopted only "if the court believes it to be fair and reasonable," *Klein v. Klein,* 544 P.2d 472, 476 (Utah 1975). But Husband provides no authority for his resulting assertion that a district court *may not* enforce a stipulation unless the district court makes a formal finding that it is fair and reasonable. And the presumption seems to be the exact opposite, that is, that a stipulation will ordinarily be enforced "unless the court finds it to be *un*fair or *un*reasonable," *Colman v. Colman,* 743 P.2d 782, 789 (Utah Ct.App. 1987) (emphases added). Thus, from the district court's decision to enforce the stipulation, we assume—and have no findings that would indicate otherwise—that the court determined that the property division was equitable. And based on the facts of this case, in particular the sophistication of the parties and the fact that they each had the opportunity to consult with counsel and other advisors before entering the stipulation, we cannot say that the court's admittedly cursory finding exceeds the limits of reasonableness.

## III. Failure to Hold an Evidentiary Hearing

■ ¶ 14 Despite Husband's request for an evidentiary hearing, the district court accepted the commissioner's recommendation

---

**3.** Husband argues that his ineligibility for a loan based on the status of the leases was an unforeseen future event. However, when Husband entered the stipulation, he was well aware of the current status of the leases and could have checked to see if such would be adequate to support the contemplated loan. This ineligibility therefore fails as an unforeseen future event. Likewise, the future expectations advanced under Husband's mutual mistake argument do not support his impossibility claim because they are not future events that *made performance impossible.* Husband admits that the alleged impossibility of performance existed even when the stipulation was signed. Furthermore, as a general rule, stability in market events and financial ability are not basic assumptions of contracts. *See* Restatement (Second) of Contracts § 261 cmt. b (1981) ("The continuation of existing market conditions and of the financial situation of the parties are ordinarily not such [basic] assumptions, so that mere market shifts or financial inability do not usually effect discharge under the rule [regarding impracticability].").

**4.** We further note that Husband's ability to provide evidence that performance was impossible or highly impracticable is severely limited where he never actually applied for a loan as contemplated, let alone having done so in the time frame set forth by the stipulation.

**5.** However, according to comments made at oral argument, both parties apparently considered this finding to express the determination, albeit a conclusory one, *by the district court* that the stipulation was fair and equitable. Yet Husband neither marshals the evidence to adequately challenge this finding nor cites to any authority providing that more detailed findings are required to explain *why* the stipulation was fair and reasonable. *See generally Chen v. Stewart,* 2004 UT 82, ¶¶ 76–80, 100 P.3d 1177 (explaining the marshaling requirement); *Smith v. Smith,* 1999 UT App 370, ¶ 8, 995 P.2d 14 (discussing briefing requirements).

and entered the decree of divorce without holding an evidentiary hearing. Husband argues that this denied him due process. We disagree. Importantly, Husband argues that we may reach his first issue on appeal because there are no disputed facts determinative of whether the contractual defenses apply. We agree and determine that for this same reason, no evidentiary hearing was required. Although factual disputes ordinarily require a complete evidentiary hearing, there is simply no need for such a hearing when, as here, all factual disputes are immaterial to the district court's decision. *See Beltran v. Allan*, 926 P.2d 892, 898 (Utah Ct.App.1996) ("There is no dispute to these facts, and an evidentiary hearing would be of no benefit."); *Liska v. Liska*, 902 P.2d 644, 650 (Utah Ct.App.1995) ("We have already determined the commissioner's recommendation was appropriate ... because the undisputed facts overwhelmingly demonstrate [such]. Accordingly, any error made by the district court in failing to conduct an evidentiary hearing to determine the appropriateness of the commissioner's recommendation is likewise harmless."). Regardless of the disputed issues—who had the financial records of the plaza, who was responsible for signing leases, whether Husband had sufficient information from Wife to file a loan application, and what representations Wife made as to the financial situation of the plaza—Husband was not, as we have explained above, entitled to relief under the contractual defenses asserted. Therefore, the district court did not err in declining to hold an evidentiary hearing before enforcing the stipulation and entering the decree of divorce.

## CONCLUSION

¶ 15 We determine that the contractual defenses of mutual mistake and impossibility are inapplicable under the facts of this case. We also determine that the district court did not err in accepting the stipulation without making further findings that the stipulation was fair and equitable. Finally, we are convinced that Husband's due process rights were not violated due to the absence of an evidentiary hearing because there were no disputed factual issues material to the ques-

tion before the district court. Accordingly, we affirm.

¶ 16 WE CONCUR: GREGORY K. ORME and J. FREDERIC VOROS JR., Judges.