2011 UT App 165

**KILGORE PAVEMENT MAINTENANCE, LLC, a Utah limited liability company, Plaintiff and Appellant,**

v.

**WEST JORDAN CITY, Defendant and Appellee.**

No. 20100123–CA.

Court of Appeals of Utah.

May 19, 2011.

Graden P. Jackson and William B. Ingram, Salt Lake City, for Appellant.

Jeffrey Robinson, West Jordan; and David M. Bernstein and E. Jay Sheen, Salt Lake City, for Appellee.

Before Judges THORNE, VOROS, and ROTH.

## OPINION

THORNE, Judge:

¶ 1 Plaintiff Kilgore Pavement Maintenance, LLC (Kilgore) appeals from the district court's ruling granting West Jordan City's (the City) motion to first dismiss the majority of Kilgore's claims and thereafter granting a motion for reconsideration dismissing the sole remaining claim. We affirm.

## BACKGROUND

¶ 2 In the spring of 2008, the City solicited bids for a road reconstruction project. On July 1, Kilgore submitted a bid to the City with a total proposed price of $697,901 for its asphalt services, which included labor and materials for the project. The bid was calculated using, among a number of factors, the

price of liquid asphalt oil, which at the time was $350 per ton. The City accepted Kilgore's bid and the parties entered into a written contract.

¶ 3 A short time later, the cost of liquid asphalt oil increased to $1005 per ton. On August 22, Kilgore submitted a request to the City's engineering department for a price increase of $91,000. The work was completed in August and the City paid the contract price for the project.[1] On October 14, the city manager presented the city council with an amendment to the contract for the price adjustment. The city council voted against the amendment.

¶ 4 On January 30, 2009, Kilgore filed a complaint alleging commercial impracticability/practical impossibility, unjust enrichment, breach of contract, and breach of implied covenant of good faith and fair dealing. The City filed a motion to dismiss the complaint under rule 12(b)(6) of the Utah Rules of Civil Procedure for failure to state a claim upon which relief can be granted. The district court heard oral arguments on the City's motion and subsequently granted the motion and dismissed all of Kilgore's actions except its commercial impracticability/practical impossibility claim. Thereafter, the City filed a motion for reconsideration. The district court heard oral arguments on the motion for reconsideration, granted the motion, and dismissed Kilgore's commercial impracticability/practical impossibility claim. Kilgore now appeals.

### ISSUE AND STANDARDS OF REVIEW

■ ¶ 5 Kilgore argues that the district court erred when it dismissed with prejudice Kilgore's commercial impracticability/practical impossibility claim based on the court's determination that Kilgore, pursuant to the contract terms, assumed the risk of cost increases and cannot therefore rely on a claim of commercial impracticability/practical impossibility.[2] Whether the district court properly granted the motion to dismiss is "a question of law, [which] we review for correctness, giving no deference to the decision of the trial court." *Gunn v. Utah State Ret. Bd.*, 2007 UT App 4, ¶ 6, 155 P.3d 113 (alteration in original) (internal quotation marks omitted). "We review issues of contract interpretation not requiring a resort to extrinsic evidence for correctness, affording no deference to the trial court." *Miller Family Real Estate v. Hajizadeh*, 2008 UT App 475, ¶ 4, 200 P.3d 213.

### ANALYSIS

■ ¶ 6 Kilgore argues that the district court erred in finding that Kilgore had assumed the risk of impracticality because no terms of the contract expressly allocate this risk.[3] Here, the district court determined that under the contract,

> [Kilgore] assumed responsibility for supplying all materials necessary for [its] performance and therefore assumed the risk of supply cost increases. While it is true that the cost of asphalt oil increased dramatically after the contract was entered into, a party who assumes the risk of cost increases pursuant to contract terms cannot rely on a claim of impossibility/commercial impracticability. The intent of the

---

1. The record does not reveal the exact date for either event. The month the project was completed was discussed during oral arguments for the City's motion to dismiss, where Kilgore's counsel asserted that the "work was done in August." During oral arguments on appeal, counsel for the City stated that the work was done before Kilgore made the price increase request. The record, however, does not reveal, nor do the parties provide, the date the City paid the contract price.

2. We remind litigants to include in the addendum "those parts of the record on appeal that are of central importance to the determination of the appeal, such as ... findings of fact and conclusions of law, memorandum decision, the transcript of the court's oral decision...." Utah R.App. P. 24(a)(11)(C); *see also id.* R. 24(b)(2).

3. Kilgore cites section 74.15 of Corbin on Contracts, *see* 14 James P. Nehf, Corbin on Contracts, § 74.15, at 90 (2001), in support of his argument that in order for the court to find assumption of risk, the risk must have been explicitly contracted for by the parties. Section 74.15, however, does not contain such a requirement. *See id.* ("Generally speaking, risk assumption may be understood in several ways: by voluntary assent to accept the risk in the contract itself; by tacit assent, e.g., by failing to protect against a known risk in the contract....").

parties, as expressed by the terms of the contract, should be upheld....

The district court is correct that a finding of impossibility or impracticality excuses a party from performing unless the party has assumed the risk of the event. *See Western Props. v. Southern Utah Aviation, Inc.*, 776 P.2d 656, 658–59 (Utah Ct.App.1989); 14 James P. Nehf, Corbin on Contracts, § 74.15, at 90 (2001). Thus, we consider whether the court correctly interpreted the contract to include an assumption of risk. "In interpreting a contract, we first look to the language of the document to determine its meaning and the intent of the contracting parties. We also consider each contract provision ... in relation to all of the others, with a view toward giving effect to all and ignoring none." *Encon Utah, LLC v. Fluor Ames Kraemer, LLC*, 2009 UT 7, ¶ 15, 210 P.3d 263 (omission in original) (internal quotation marks omitted).

¶ 7 The City argues that the district court did not err in its risk allocation determination because Kilgore expressly assumed the risk of supply cost increases by entering into a fixed price contract with the City.[4] In support of this argument, the City asserts that Kilgore expressly assumed responsibility for the materials necessary for the work in articles 6.2(d) and 11.1(a) of the General Conditions of the Contract and the City specifically disclaimed responsibility for Kilgore's failure to perform or furnish the work including materials in article 14.14. These provisions read as follows:

6.2 Labor, Materials, and Equipment:

. . . .

d. Unless otherwise specified in the Contract Documents, the *Contractor shall furnish and assume full responsibility for all materials* ... necessary for furnishing, performance, testing, start-up, and completion of the Work.

. . . .

11.1 General:

a. The Contract Price constitutes the total compensation (subject to City-authorized adjustments) payable to the Contractor for performing the Work. *All duties, responsibilities, and obligations assigned to or undertaken by the Contractor shall be at its expense without change in the Contract Price.*

. . . .

14.14 Final Payment Terminates Liability of the City: The acceptance by the Contractor of the final payment referred to in Article 14.11 herein, shall be a release of the City and its agents from all claims of liability to the Contractor for anything done or furnished for, or relating to, the Work or for any act or neglect of the City or of any person relating to or affecting the Work, except demands made against the City for the remainder, if any, of the amounts kept or retained under the provisions of Article 14.11, herein, and excepting all pending, unresolved claims filed prior to the date of the Notice of Completion.

(Emphases added.) Kilgore argues that the language in article sections 11.1(b) and 11.1(c), pertaining to change of the contract price, demonstrates that Kilgore did not contract for the risk of an impracticable increase in material supplies. These provisions read as follows:

b. The Contract Price may only be changed by a Change Order. Any claim for an increase or decrease in the Contract price shall be based on written notice delivered by the party making the claim to the other party and to the Engineer promptly (but in no event later than 30 days) after the occurrence of the event giving rise to the claim....

c. The value of any Work covered by a Change Order or Work Directive Change

---

4. The City refers to two documents signed by the president of Kilgore that provide a basis for its assertion that the parties entered into a fixed price contract: (1) the bid document stating, in part, "Bidder agrees to ... all Bid Schedule(s), ... and said Bidder further agrees to complete the Work ... and to accept in full payment therefore the Contract Price based on the Lump Sum or Unit Bid Price(s) named in the aforementioned Bid Schedule(s)" and (2) the agreement form providing that "The [City] shall pay the [Contractor] for the completion of the Work the sum of $697,901.00 in accordance with the Contract Documents and the [Contractor's] Bid and Bid Schedule(s)."

or of any claim for an increase or decrease in the Contract Price shall be determined in one of the following ways:....

¶ 8 After reviewing the pertinent articles, outlined above, we determine that the district court correctly interpreted the contract to include an assumption of risk. Articles 6.2 and 11.1(a) expressly delegate the responsibility to Kilgore to furnish materials at its own expense without any automatically resulting change in the contract price. And article 14.4, purports to disclaim the City's responsibility for any failure by Kilgore to perform or furnish the work in accordance with the contract documents, which documents specifically allocate to Kilgore the responsibility to furnish materials at the contract price. While article sections 11.1(b) and 11.1(c) provide the parties with the ability to seek an increase or decrease in the contract price, these sections are not inconsistent with articles 6.2 and 11.1, and do not in themselves eliminate or alter Kilgore's responsibility to furnish materials as per the contract price. Based on the foregoing review of the pertinent contract provisions and the fixed price nature of the contract, we conclude that the district court did not err in finding that "pursuant to the contract, [Kilgore] assumed responsibility for supplying all materials necessary for [its] performance, and therefore, assumed the risk of supply cost increases."

■ ¶ 9 Kilgore also argues that the doctrine of commercial impracticality may apply in broader circumstances beyond excusing performance. Kilgore asserts that based on the doctrine of commercial impracticability it is entitled to an equitable adjustment in the contract price to compensate Kilgore for the sudden and dramatic increase in the price of liquid asphalt oil. The impracticability principle is generally identified in case law as the contractual defense of impossibility. *See Robinson v. Robinson,* 2010 UT App 96, ¶ 12, 232 P.3d 1081, *cert. denied,* 241 P.3d 771 (Utah 2010); *Commercial Union Assocs. v. Clayton,* 863 P.2d 29, 38 (Utah Ct.App.1993); *Western Props.,* 776 P.2d at 658. " 'Under the contractual defense of impossibility, an obligation is deemed discharged if an unforeseen event occurs after formation of the con-

tract and without fault of the obligated party, which event makes performance of the obligation impossible or highly impracticable.' " *Robinson,* 2010 UT App 96, ¶ 12, 232 P.3d 1081 (emphases omitted) (quoting *Western Props.,* 776 P.2d at 658); *see also* Restatement (Second) of Contracts § 261 (1981) ("Where, after a contract is made, a party's performance is made impracticable without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his duty to render that performance is discharged, unless the language or the circumstances indicate the contrary.").

¶ 10 Our research reveals no Utah case law, nor does Kilgore direct us to any, that applies the defense of impossibility so as to equitably adjust a contract price due to an unforeseen event, without a modification of the contract by the parties. Nevertheless, Kilgore asserts that courts have recognized that the impossibility defense is sufficiently flexible to apply in circumstances beyond excusing performance so as to allow equitable adjustment of an unmodified contract. In support of such a liberal application of the impossibility defense, Kilgore cites, without any discussion or analysis, to *Bitzes v. Sunset Oaks, Inc.,* 649 P.2d 66, 68 (Utah 1982), and section 74.15 of Corbin on Contracts, *see* 14 James P. Nehf, Corbin on Contracts, § 74.15, at 90 (2001). Neither reference is directly on point for the proposition Kilgore asserts. The more liberal application of the impossibility defense discussed in *Bitzes* is merely a statement by the supreme court of a more current formulation of the doctrine as opposed to the earliest expression on the availability of the doctrine found in *McKay v. Barnett,* 21 Utah 239, 60 P. 1100, 1102 (1900). *See Bitzes,* 649 P.2d at 68. Likewise, section 74.15 of Corbin on Contracts does not necessarily support the application of the impossibility doctrine to the circumstances in this case. Section 74.15 provides that "the impossibility doctrine is sufficiently flexible and adaptive to achieve just results dependent on the factual circumstances presented to the court." 14 Corbin on Contracts, § 74.15, at 91. It appears that this statement refers in part to the flexibility provided by the risk assumption exception to the impossibility

doctrine rather than applying the impossibility concept, as Kilgore suggests, to allow for an equitable adjustment of a contract absent a contract modification. *See id.* at 90 ("The duty will not be discharged if the party seeking discharge assumed the risk that the disabling event might occur.").

¶ 11 Kilgore further asserts that *Raytheon Co. v. White*, 305 F.3d 1354 (Fed.Cir.2002), and *M.J. Paquet, Inc. v. New Jersey Department of Transportation*, 171 N.J. 378, 794 A.2d 141 (2002), both provide equitable adjustments in public contracts for changes imposed by unforeseen events. However, both cases involve an equitable adjustment of the contract price after an unforeseen event had prompted the parties to modify the contract requirements. As such, neither case supports the equitable adjustment of a contract price without a previously occurring modification of the contract requirements by the parties, as is the circumstance in the case at hand. *See Raytheon Co.*, 305 F.3d at 1368 (noting that the company was compensated for the numerous changes and rejecting the argument that "whenever a contract specification requires extensive changes, performance of the contract must be impracticable"); *M.J. Paquet, Inc.*, 794 A.2d at 149 ("[T]he purpose of an equitable adjustment is to keep a contractor whole when the Government modifies a contract." (internal quotation marks omitted)). As a result, we decline to apply the impossibility defense in the manner Kilgore requests and instead affirm the district court's decision not to discharge Kilgore's duty based on its determination that Kilgore assumed the risk of supply cost increases.

## CONCLUSION

¶ 12 Articles 6.2(d) and 11.1(a) clearly provide that Kilgore had the obligation to furnish materials at its own expense without any resulting change in the contract price. In accepting the responsibility to furnish materials at the contract price, Kilgore expressly accepted the risk of supply cost increases. Kilgore's argument that the inclusion of arti-

cles 11.1(b) and 11.1(c) demonstrates that the parties did not contract for the risk of an impracticable increase in material supplies is unavailing. These articles merely outline the procedure by which the parties may seek a change in either the work to be done or the contract price. As a result, we conclude that the district court properly found that Kilgore assumed the risk of a supply cost increase and affirm the court's dismissal of Kilgore's commercial impracticability/practical impossibility claim.[5]

¶ 13 Affirmed.

¶ 14 WE CONCUR: J. FREDERIC VOROS JR. and STEPHEN L. ROTH, Judges.

---

5. Additionally, because Kilgore does not provide this court with any Utah case law that applies the defense of impossibility to equitably adjust a con-

tract price, without a modification of the contract by the parties, due to an unforeseen event, we decline to apply the doctrine in this manner.