2007 UT App 154

**Miguel David GEDO, Petitioner and Appellee,**

v.

**Shacké ROSE, Respondent and Appellant.**

**No. 20060147–CA.**

Court of Appeals of Utah.

May 3, 2007.

Ron D. Wilkinson and Janet G. Peterson, Orem, for Appellant.

Miguel David Gedo, Orem, Appellee Pro Se.

Before BENCH, P.J., ORME and THORNE, JJ.

## OPINION

THORNE, Judge:

¶ 1 Shacké Rose (Mother) appeals from the district court's order for genetic testing to determine whether Miguel David Gedo is the biological father of her son J.R. We vacate the trial court's order for genetic testing and remand this matter for further proceedings consistent with this opinion.

## BACKGROUND

¶ 2 Mother has been married to Douglas Rose (Father) for over eighteen years. J.R., the fourth of five children, was born into the marriage on April 23, 1998. Gedo filed this paternity action in 2005, seeking to adjudicate himself as J.R.'s father. Mother has acknowledged the possibility that Gedo may be J.R.'s biological father.

¶ 3 The parties' versions of events since J.R.'s birth are wildly divergent. According to Mother, J.R. has been happily living with her and Father in a cohesive family unit, has seen Gedo only briefly since his birth and not at all in the last three years, and has never formed any sort of parent-child relationship with Gedo. Mother also asserts that Gedo acquiesced in Father's role as J.R.'s father, never paid child support or any other costs pertaining to J.R., and never took any steps to establish his parentage. According to Gedo, Gedo has a strong parent-child relationship with J.R. and has "paid child support, medical bills, and costs at birth." Gedo acknowledges his lack of legal action to establish paternity, but claims that he brought this action after Mother cut him out of J.R.'s

life. The district court made no factual findings below, and for purposes of this appeal we simply acknowledge the factual disputes between the parties.

¶ 4 After Gedo commenced this action, Mother filed a motion to dismiss alleging that Gedo lacked *Schoolcraft* standing [1] to challenge J.R.'s paternity. *See In re J.W.F.*, 799 P.2d 710, 713 (Utah 1990). The district court initially granted Mother's motion, but set aside that ruling after receiving Gedo's objection. In the meantime, Gedo filed a motion seeking to compel genetic testing. The district court granted Gedo's motion on January 12, 2006. That order has been stayed by this court pending resolution of Mother's interlocutory appeal. Mother's motion to dismiss and a motion to intervene filed by Father remain pending in the district court.

## ISSUES AND STANDARDS OF REVIEW

¶ 5 Mother raises multiple issues on appeal, but the only two that we address are her claims that genetic testing should not occur in this case until Father is joined as a party and until Gedo is determined to have *Schoolcraft* standing to challenge J.R.'s paternity. Both of these issues present questions of law that we review for correctness. *See Harris v. IES Assocs., Inc.*, 2003 UT App 112, ¶ 25, 69 P.3d 297 ("To the extent [an] issue requires us to interpret rules of civil procedure, it presents a question of law which we review for correctness." (quotations and citation omitted)); *see also Pearson v. Pearson*, 2006 UT App 128, ¶ 12, 134 P.3d 173 ("Generally, a person's standing to request particular relief presents a question of law."), *cert. granted*, 150 P.3d 58 (Utah 2006).

## ANALYSIS

¶ 6 The district court ordered genetic testing without addressing Mother's chal-

---

1. The term *"Schoolcraft* standing" refers to the analysis set forth in *In re J.W.F.*, 799 P.2d 710 (Utah 1990), and is named for the petitioner in that case. A *Schoolcraft* standing analysis determines a person's standing to challenge the presumption of legitimacy of a child born into a marriage, based primarily on two policy consid-

erations: "preserving the stability of the marriage and protecting children from disruptive and unnecessary attacks upon their paternity." *Id.* at 713; *see also Pearson v. Pearson*, 2006 UT App 128, ¶ 6 n. 2, 134 P.3d 173, *cert. granted*, 150 P.3d 58 (Utah 2006).

lenge to Gedo's *Schoolcraft* standing and without joining Father as a party. We agree with Mother that Father's joinder and a determination of Gedo's standing are both prerequisites to court-ordered genetic testing in this matter.

¶ 7 We initially determine that Father is necessary to this action and must be joined as a party before the matter proceeds. Rule 19 of the Utah Rules of Civil Procedure governs the joinder of necessary parties:

> A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of action shall be joined as a party in the action if ... he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may ... as a practical matter impair or impede his ability to protect that interest.... If he has not been so joined, the court shall order that he be made a party.

Utah R. Civ. P. 19(a). Here, Father is subject to service of process, and his joinder will not deprive the district court of jurisdiction. Further, Gedo's action seeks to divest Father of his parental rights over J.R., giving Father the requisite protectable interest in the litigation.[2] Under these circumstances, rule 19 requires that the district court "shall order that [Father] be made a party." *Id.*[3] We therefore direct the district court to bring Father into the action by granting his motion to intervene, or taking other action as the court sees fit. The district court is to take no further substantive action in this matter until Father is properly made a party.

---

**2.** We note that Father is entitled to protect his own interests as a party even though Mother is also taking the position that Gedo's paternity challenge should fail. Father's interests, strategies, and tactics may or may not diverge from Mother's at some point in the litigation, but in any event, Father is entitled to participate as a party to the action. Because Father is actively seeking inclusion in the litigation, we express no opinion as to whether Father would be deemed an indispensable party under rule 19(b) if he could not be made a party for some reason. *See* Utah R. Civ. P. 19(b).

**3.** Mother also cites to Utah Code section 78–45g–603 for the proposition that a man whose pater-

¶ 8 Father's absence from this litigation, by itself, provides an ample basis for vacating the district court's genetic testing order. *Cf. Call v. City of W. Jordan,* 788 P.2d 1049, 1054–55 (Utah Ct.App.1990) ("The purpose of rule 19 is to protect against the entry of judgments which might prejudice the rights of indispensable parties in their absence."). However, even if Father had been properly joined and allowed input regarding Gedo's motion, the district court should still not have entertained the motion until it had first determined that Gedo has standing to challenge J.R.'s paternity.

¶ 9 Standing is a jurisdictional requirement that must exist before a court may entertain a controversy. *See Jones v. Barlow,* 2007 UT 20, ¶ 12, 154 P.3d 808. Without the jurisdictional requirement of standing, a court has no authority to act. *See, e.g., Utah Chapter of the Sierra Club v. Utah Air Quality Bd.,* 2006 UT 74, ¶ 17, 148 P.3d 960 ("Utah standing law 'operates as gatekeeper to the courthouse, allowing in only those cases that are fit for judicial resolution.'" (quoting *Terracor v. Utah Bd. of State Lands & Forestry,* 716 P.2d 796, 798–99 (Utah 1986))). Here, Mother raised a colorable challenge to Gedo's *Schoolcraft* standing before the district court, and the court should have resolved that challenge prior to proceeding to the merits of Gedo's petition. Accordingly, the genetic testing order must also be vacated because the district court failed to establish Gedo's standing under a *Schoolcraft* analysis, and thereby establish the court's jurisdiction to grant Gedo relief.

¶ 10 Mother asks this court to conduct the *Schoolcraft* analysis itself, determine

nity is to be adjudicated must be made party to a paternity action. *See* Utah Code Ann. § 78–45g–603 (Supp.2006) ("The following individuals shall be joined as parties in a proceeding to adjudicate parentage: ... (2) a man whose paternity of the child is to be adjudicated...."). However, that statute and the other provisions of the Utah Uniform Parentage Act, *see id.* §§ 78–45g–101 to –902 (Supp.2006), apply only to actions filed on or after May 1, 2005. Gedo filed this action on April 20, 2005, and thus, this matter is governed by the Uniform Act on Paternity, *see id.* §§ 78–45a–1 to –17 (2002), which does not contain specific direction about necessary parties.

that Gedo has no standing, and dismiss Gedo's action for lack of jurisdiction as a matter of law. This we cannot do. *Schoolcraft* standing depends on two factors, both of which are fact-dependent in any given case: "preserving the stability of the marriage and protecting children from disruptive and unnecessary attacks upon their paternity." *In re J.W.F.*, 799 P.2d 710, 713 (Utah 1990). The district court made no factual findings regarding these factors, and the parties' representations of the state of both the Roses' marriage and J.R.'s relationship with Father are substantially in dispute.

¶ 11 Without district court findings or an undisputed factual record, an appellate court is not in a position to make the factual determinations that will establish or disestablish *Schoolcraft* standing. *See, e.g., Bailey v. Bayles*, 2002 UT 58, ¶ 19, 52 P.3d 1158 ("It is inappropriate for an appellate court … to assume the role of weighing evidence and make its own findings of fact."). Accordingly, on remand, the district court is directed to resolve the issue of Gedo's *Schoolcraft* standing as its first order of business after joining Father in the action.

## CONCLUSION

¶ 12 We determine that Father is a necessary and available party to this litigation and that the action may not proceed until Father is made a party thereto. We further hold that the district court's order for genetic testing was premature and should not have issued until after a finding that Gedo has standing to challenge J.R.'s paternity. Accordingly, we vacate the district court's order for genetic testing and remand this matter with directions that the district court bring Father into the action and conduct a *School-*

4. The district court should not conduct the *Schoolcraft* analysis until Father is allowed to participate fully in the resolution of the issue and the other parties are allowed to respond in turn.

5. We also note that Gedo has filed multiple pleadings in the district court and in this court that are disrespectful, and border on being scandalous. Mother has not complained about Gedo's litigation tactics, and we have elected to simply address Mother's appeal on its merits. However, Gedo must recognize that there can be

*craft* standing analysis[4] before further addressing Gedo's claims.[5]

¶ 13 WE CONCUR: RUSSELL W. BENCH, Presiding Judge and GREGORY K. ORME, Judge.

substantive consequences when litigation behavior crosses the line into the impermissible. *See Peters v. Pine Meadow Ranch Home Ass'n*, 2007 UT 2, 151 P.3d 962 (striking petitioners' briefs due to appellate counsel's scandalous, defamatory, and offensive briefing, resulting in the court's refusal to consider petitioners' arguments); *see also* Utah R.App. P. 24(k) ("All briefs under this rule must be … free from burdensome, irrelevant, immaterial or scandalous matters.").