*This opinion is subject to revision before final publication in the Pacific Reporter*

**2013 UT 67**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

CENTRAL UTAH WATER CONSERVANCY DISTRICT,
*Plaintiff and Appellant,*

*v.*

UPPER EAST UNION IRRIGATION COMPANY, EAST RIVER BOTTOM
WATER COMPANY, and TIMPANOGOS CANAL COMPANY,
*Defendants and Appellees.*

No. 20111028
Filed November 15, 2013

Fourth District, Provo Dep't
The Honorable Lynn W. Davis
No. 070401446

Attorneys:

Edwin C. Barnes, Steven E. Clyde, Katherine E. Judd,
Salt Lake City, for appellant

Thomas W. Seiler, Jamis M. Gardner, Provo, for appellee
Upper East Union Irrigation Company

Robert L. Jeffs, Randall L. Jeffs, Provo, for appellee
East River Bottom Water Company

Robert C. Fillerup, Orem, for appellee
Timpanogos Canal Company

JUSTICE PARRISH authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE NEHRING,
JUSTICE DURHAM, and JUSTICE LEE joined.

JUSTICE PARRISH, opinion of the Court:

## INTRODUCTION

¶1    This appeal arises from the Central Utah Water Conservancy District's (CUWCD) January 7, 2003 agreement (Agreement) to improve irrigation structures belonging to Upper East Union Irrigation Company (UEU), East River Bottom Water Company (ERB), and Timpanogos Canal Company (TCC) (collectively, Canal Companies) in exchange for rights to the increased water flow arising from the improvements. CUWCD failed to complete its

obligations under the Agreement. After negotiations with the Canal Companies broke down, CUWCD filed a declaratory action to establish its contractual rights.

¶2      The district court ruled that because CUWCD breached its obligations under the Agreement, UEU and ERB were entitled to enforce the bargained-for damages provisions, resulting in the loss of CUWCD's prospective water rights. CUWCD appeals, asserting that the district court erred by: (1) granting summary judgment in favor of the Canal Companies, (2) failing to recognize that UEU and ERB received the benefit of their bargain, (3) refusing to reconsider its summary judgment ruling, (4) rejecting CUWCD's claims that its performance was excused under the doctrine of impracticability, (5) failing to recognize CUWCD's tender of cash in lieu of performance, and (6) refusing to allow CUWCD to amend its pleadings to add allegedly necessary parties.

¶3      We affirm the judgment of the district court in its entirety. Specifically, we hold that CUWCD's breach was material because UEU and ERB did not receive the benefit of their bargain. And the breach was not excused by the doctrine of impracticability or CUWCD's tender of cash in lieu of performance. Therefore, the district court appropriately entered summary judgment in favor of UEU and ERB and was under no obligation to reconsider its ruling. Finally, the district court did not abuse its discretion when it refused to allow CUWCD to amend its pleadings to join allegedly necessary parties.

**BACKGROUND**

¶4      CUWCD, ERB, UEU, TCC, Brigham Young University (BYU), and Provo City Corporation (Provo) entered into an Agreement to affect the diversion and conveyance of water from the Provo River throughout the Provo and Orem areas.[1]  The Agreement describes the scope of the project as follows:

> PROJECT DESCRIPTION: The project would convert portions of existing open ditch water delivery systems of both the ERB and UEU to a piped delivery system . . . .  The proposed project includes the piping of portions of both the ERB and UEU canal systems,

---

[1]  Because BYU and Provo are not parties to this lawsuit, we do not discuss their respective rights or responsibilities under the Agreement.

the rehabilitation of the TCC diversion, and the replacement or enlargement of an existing 1,500-foot section of 30" HDPE pipe in the TCC piped system.

The Agreement required that ERB and UEU abandon their existing diversion in favor of the improved TCC Diversion. CUWCD agreed to undertake and pay all costs for these improvements. In return, the Canal Companies agreed to convey to CUWCD the rights to the water that would be conserved as a result of the improvements and to convey by quitclaim deed the percentage of water rights CUWCD already owned in the Canal Companies.

¶5 To insure against CUWCD's breach, the Agreement required that CUWCD place quitclaim deeds in escrow, representing the water rights it would receive upon completion of the agreed-to improvements. The Agreement states that "[i]n the event CUWCD defaults in the performance of its obligation to construct the project as defined in this Agreement . . . [the Canal Companies] may request the delivery of th[ese] escrowed quitclaim deed[s] as [their] sole remedy." The Agreement states that the project will be completed by April 15, 2004.

¶6 By May 3, 2004, CUWCD had substantially completed the improvements to the piping portions of the canal systems as required by the Agreement. But it had not completed, nor even begun to replace, the TCC Diversion.

¶7 On March 30, 2007, almost three years after the improvements were to have been completed, CUWCD sent a letter to the Canal Companies "to summarize and confirm our discussions and negotiations" related to the replacement of the TCC Diversion. CUWCD stated that it would not be possible to complete the TCC Diversion work based on "environment[al] and permitting concerns," and that "[i]n lieu of further work on the diversion structure, [CUWCD] offers to pay to [the Canal Companies], collectively, the sum of $75,000." CUWCD further stated that "this letter will also serve as a tender of that sum of money together with [CUWCD]'s prior work and improvements . . . under Utah Code Ann. [section] 78-27-1 as full performance of [CUWCD]'s obligations under [the] Agreement." It concluded by stating that if the Canal Companies did not expressly reject its offer by April 16, 2007, CUWCD would consider its purported tender accepted. The Canal Companies did not respond to CUWCD's letter.

¶8 On June 11, 2007, the Canal Companies sent written notice informing CUWCD that it had defaulted on its obligation to replace

the TCC Diversion. Thirty days after sending the default letter, the Canal Companies requested delivery of the escrowed quitclaim deeds under the damage provisions of the Agreement because CUWCD had not commenced to cure its default. In the interim, CUWCD filed the complaint in the underlying lawsuit seeking a judicial determination that the Canal Companies had accepted CUWCD's purported tender by failing to timely object. The Canal Companies individually responded by filing answers, counterclaims, and cross-claims.

¶9 After the parties had completed discovery, UEU filed a motion for partial summary judgment, arguing that CUWCD's offer of payment in lieu of performance was not a valid tender of performance and that CUWCD's obligation to reconstruct the TCC Diversion was not excused by the doctrine of impracticability. UEU further alleged that CUWCD's breach was material because CUWCD had not substantially completed its contractual obligations.

¶10 TCC also sought partial summary judgment. It concurred in UEU's motion for partial summary judgment, arguing that a valid tender offer requires tender of the amount due or the performance required under the contract. ERB also sought partial summary judgment, concurring in UEU's summary judgment motion and raising essentially the same arguments made by UEU and TCC.

¶11 CUWCD opposed the motions, arguing that it had substantially performed all of its obligations under the Agreement and that, in any case, the parties had waived any objection to CUWCD's tender of payment in lieu of performance. CUWCD also filed a motion for leave to assert the additional affirmative defense that the Canal Companies had failed to join necessary parties. Specifically, CUWCD argued that the United States Department of the Interior (DOI) and the Utah Reclamation Mitigation Conservation Commission (URMCC) were necessary and indispensable parties because "federal funds were used to create the saved water rights" and the saved water rights were to benefit, in part, federal purposes.

¶12 The district court granted the Canal Companies' motions for partial summary judgment, ordered the delivery of the quitclaim deeds in favor of UEU and ERB, and reserved ruling on the issue of TCC's appropriate remedy.

¶13 Because the district court ruled only on the Canal Companies' motions for partial summary judgment, CUWCD filed a motion to stay the proceedings, arguing that the district court's ruling was

not a final judgment, that the district court had not addressed CUWCD's requested declaratory relief regarding title to the canals, and that the district court had not considered the District's entitlement to equitable relief in quantum meruit. "[CUWCD] requested that the district court stay execution and delay release of the quitclaim deeds to UEU and ERB to address these open issues, preserve the status quo, and prevent injustice." Additionally, CUWCD filed a motion to reconsider, arguing that the district court's decision to release the quitclaim deeds resulted in an unconscionable forfeiture.

¶14 The district court denied CUWCD's motion to reconsider and subsequently entered summary judgment in favor of UEU and ERB. The court directed that its order be entered as a final judgment pursuant to rule 54(b) and released the quitclaim deeds to UEU and ERB. The district court also entered partial summary judgment in favor of TCC, reserving the issue of appropriate remedies and staying any further proceedings on that issue pending resolution of this appeal.

¶15 CUWCD timely appealed and we have jurisdiction under Utah Code section 78A-3-102(3)(j).

## STANDARD OF REVIEW

¶16 Because CUWCD raises a number of issues, we briefly set forth the overarching standard of review here. We then discuss the specific standards of review for each issue within the section analyzing that issue.

¶17 The bulk of CUWCD's asserted errors arise in the context of the district court's grant of summary judgment in favor of UEU and ERB. Summary judgment is proper only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." UTAH R. CIV. P. 56(c). "In considering a grant of summary judgment, we review the [district] court's legal decision for correctness, giving no deference, and review the facts and inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Peterson v. Coca-Cola USA*, 2002 UT 42, ¶ 7, 48 P.3d 941 (internal quotation marks omitted).

¶18 When it granted summary judgment, the district court relied on the language of the Agreement. Because the parties did not allege that the Agreement was ambiguous or present extrinsic evidence regarding its meaning, the district court did not look beyond the four corners of the document. "Questions of contract

interpretation not requiring resort to extrinsic evidence are matters of law, and on such questions we accord the trial court's interpretation no presumption of correctness." *Zions First Nat'l Bank, N.A. v. Nat'l Am. Title Ins. Co.*, 749 P.2d 651, 653 (Utah 1988).

## ANALYSIS

### I. UEU AND ERB DID NOT RECEIVE THE BENEFIT OF THEIR BARGAIN

¶19   CUWCD argues that any breach of the Agreement was not material because UEU and ERB received the full benefit of their bargain.  The district court disagreed.  It reasoned that "all parties were to benefit from the rehabilitation [of the TCC Diversion]," that CUWCD had not substantially performed, and that UEU and ERB therefore had not received the full benefit of their bargain.  We review the district court's decision for correctness, affording no deference to its legal determinations. *Peterson v. Coca-Cola USA*, 2002 UT 42, ¶ 7, 48 P.3d 941.

¶20   All parties to the Agreement recognized that the TCC Diversion was "in poor condition and in need of repair."  CUWCD agreed to replace the TCC Diversion.  Section 6 of the Agreement states that "CUWCD . . . shall remove and replace at its sole expense TCC's existing diversion structure and replace it with a new radial gate and other appurtenant facilities."  CUWCD has not even undertaken that work and has made it clear that it will not do so. CUWCD admits that it has breached its explicit obligations under the Agreement, but alleges that its obligation to replace the diversion runs only to TCC, not to all of the Canal Companies.  We now turn to that issue.

¶21   CUWCD concedes that it owed TCC an obligation to replace the TCC Diversion.  Its concession is supported by the language of the Agreement, which requires CUWCD to replace the TCC Diversion "as consideration for TCC's granting of [a] permanent right and easement to ERB and UEU."  But CUWCD argues that because the Agreement consists of three contracts merged into a single document, CUWCD's consideration to UEU and ERB was "separate[] and apart from the consideration recited for TCC."  We disagree.  The language of the Agreement simply does not support CUWCD's argument.  Rather, CUWCD's obligation to replace the TCC Diversion was owed to all of the Canal Companies.

¶22   The district court posed the pointed question, "Isn't the [TCC] [D]iversion structure absolutely essential and integral to a

functioning system?" The answer is that "[w]ater pipes, no matter how soundly constructed, cannot deliver water that is not diverted." This self-evident fact is the heart of the matter.

¶23 Prior to entering the Agreement, UEU and ERB jointly operated an independent diversion on the Provo River to convey their water into their respective irrigation systems. UEU and ERB agreed to abandon this independently operated diversion precisely because CUWCD agreed to replace the TCC Diversion and make it available to UEU and ERB. The plain language of the Agreement obligates UEU and ERB to give up their existing diversion structure, thereby rendering them solely dependent on the contracted-for TCC Diversion. CUWCD's obligation to replace the TCC Diversion therefore constituted an important part of the overall project outlined by the Agreement.

¶24 UEU and ERB's agreement to abandon their existing diversion structure in favor of the anticipated TCC Diversion easily qualifies as a legal detriment that constitutes valid consideration. *See* 17 C.J.S. *Contracts* § 110 (2013) ("The consideration for a promise may be a legal detriment suffered by the promisee, no matter how slight or economically trifling, at the request of the promisor . . . ."). "The term 'legal detriment,' as used in testing the sufficiency of consideration, means giving up something which immediately prior thereto the promisee was privileged to retain, or doing or refraining from doing something which he or she was then privileged not to do, or not to refrain from doing." *Id.* Prior to entering into the Agreement, UEU and ERB operated their own diversion structure and were privileged to do so. But under the Agreement, they agreed to abandon their independently operated diversion.

¶25 Because the Agreement required that UEU and ERB abandon their preexisting right to own and operate an independent diversion, they suffered a legal detriment that constituted a portion of the consideration for CUWCD's obligation to replace the TCC Diversion. CUWCD therefore owed both UEU and ERB an independent duty to replace the TCC Diversion. And CUWCD cannot now establish substantial performance under the Agreement when it has not even attempted to begin construction of the bargained-for diversion.[2] As the district court correctly reasoned, the anticipated

---

[2] Had CUWCD's performance varied as to "mere technical, inadvertent, or unimportant omissions or defects," the doctrine of

(continued...)

TCC Diversion is essential to the proper and continued operation of UEU and ERB's irrigation systems.

¶26    We hold that CUWCD's obligation to replace the TCC Diversion was owed to all of the Canal Companies, including UEU and ERB.  Because CUWCD refused to fulfill its contractual obligation, it breached the Agreement.  And CUWCD cannot establish substantial performance because UEU and ERB did not receive the benefit of their bargain.

## II.  CUWCD'S REFUSAL TO REPLACE THE TCC DIVERSION WAS NOT EXCUSED UNDER THE DOCTRINE OF IMPRACTICABILITY

¶27    CUWCD next argues that the district court erred by rejecting its claim that the doctrine of impracticability excused its failure to replace the TCC Diversion.  Whether impracticability affords a party relief from its obligations under a contract is a question of law that we review for correctness.  *See Robinson v. Robinson*, 2010 UT App 96, ¶ 6, 232 P.3d 1081 (noting that whether contract defenses can afford relief is a question of law reviewed for correctness).  We hold that CUWCD's failure to perform is not excused by the doctrine of impracticability for several independent reasons.  First, CUWCD cannot establish that the event giving rise to the claim of impracticability was unforeseen.  Second, CUWCD failed to show that performance was impracticable because it did not even attempt to obtain the required permits.  Finally, even had it attempted to do so, CUWCD assumed the risk of failing to obtain the requisite permits.

¶28    The doctrine of impracticability excuses a party's performance "if an unforeseen event occurs after formation of the contract and without fault of the obligated party, which event makes performance of the obligation impossible or highly impracticable." *W. Props. v. S. Utah Aviation, Inc.*, 776 P.2d 656, 658 (Utah Ct. App.

---

[2](...continued)
substantial performance may excuse its omissions. 15 WILLISTON ON CONTRACTS, § 44:52 (4th ed. 2000); *see also* BLACK'S LAW DICTIONARY 1281 (5th ed. 1979) (noting that a party has substantially performed when "the only variance from the strict and literal performance consists of technical or unimportant omissions or defects").  But CUWCD's complete failure to replace the TCC Diversion does not consist of "technical or unimportant omissions or defects."   Its failure strikes at the very heart of the Agreement.

1989) (footnotes omitted); *see also* RESTATEMENT (SECOND) OF CONTRACTS § 266(1) (1981) ("Where, at the time a contract is made, a party's performance under it is impracticable without his fault because of a fact of which he has no reason to know and the non-existence of which is a basic assumption on which the contract is made, no duty to render that performance arises, unless the language or circumstances indicate the contrary."). A party is not excused for impracticability, however, when the event leading to the impracticability was known to the parties prior to contracting. *See W. Props.*, 776 P.2d at 658. Additionally, a party may not defend on grounds of impracticability when that party takes on the risk that a supervening event will occur and render performance impracticable or impossible. *See* RESTATEMENT (SECOND) OF CONTRACTS § 266 cmt. b (1981).

¶29 CUWCD argues that its obligation to replace the TCC Diversion should be excused because environmental and permitting constraints precluded it from completing the new diversion. Specifically, CUWCD asserts that the Rehabilitation or Replacement of Diversion Structures on the Lower Provo River project (LPRDS Project) was begun after the execution of the Agreement and that "[t]he contemplated design of the TCC Diversion was inconsistent with the[] state and federal objectives" of the LPRDS Project.

¶30 Though there appears to be a factual dispute as to if and when the LPRDS Project concluded, there is no dispute that the LPRDS project was funded pursuant to section 302(c) of the Canal Utah Project Completion Act, which was passed in 1992. Thus, at the time they entered the Agreement in 2003, the parties were on notice that the LPRDS Project may affect the agreed-to improvements, including replacement of the TCC Diversion. Because all of the parties were aware of the LPRDS Project at the time of contracting, CUWCD cannot meet the requirement of showing that the event giving rise to the impracticability was not known at the time of contracting.

¶31 Additionally, there is no dispute that CUWCD has not yet applied for or otherwise sought to obtain the permits necessary to undertake the replacement of the TCC Diversion. While CUWCD's replacement of the TCC Diversion may be "inconsistent with evolving LPRDS objectives," without a good faith attempt to obtain the necessary permits, CUWCD cannot establish that performance is impracticable. Thus, even assuming that CUWCD did not know of the LPRDS project prior to execution of the Agreement, had CUWCD sought to obtain permits and been denied, it might have a

colorable claim for impracticability. But here, where CUWCD has not even attempted to obtain the necessary permits, it cannot reasonably make such a claim.

¶32   Finally, even had CUWCD applied for and been denied the required permits, that fact would not excuse its performance because CUWCD affirmatively assumed the risk that the permitting agencies may not provide them. Section 7 of the Agreement, entitled "Permits for Construction," states that "CUWCD and/or its contractor *shall obtain* all construction permits required by all local jurisdictions and any Stream Alteration/§ 404 permits required for the reconstruction of the TCC diversion." (Emphasis added). CUWCD thus affirmatively contracted to obtain all necessary permits and assumed the risk that such permits may be difficult, or even impossible, to obtain. *See Kilgore Pavement Maint., LLC v. W. Jordan City*, 2011 UT App 165, ¶¶ 7–8, 257 P.3d 460 (holding that where a party agreed that it "*shall furnish* and assume full responsibility for all materials," it implicitly assumed the risk that the materials may have been more expensive or more difficult to obtain than originally anticipated (emphasis added)). While CUWCD explicitly undertook the obligation of obtaining the necessary permits, its performance under the Agreement was not contingent on its ability to do so. And because CUWCD never even attempted to obtain the necessary permits, it cannot establish that it would have been unable to do so. Its protestations to the contrary are mere conjecture. We thus hold that the doctrine of impracticability does not excuse its breach.

## III.  CUWCD'S OFFER OF $75,000 IN LIEU OF PERFORMANCE WAS NOT A VALID TENDER

¶33   CUWCD next asserts that the district court erred when it ruled that CUWCD's offer of payment in lieu of performance did not constitute a valid tender that excused its failure to perform. CUWCD argues that its offer of payment in lieu of its promise to replace the TCC Diversion was a valid tender offer and that the Canal Companies waived any objection to the tender by failing to timely object. The district court concluded that CUWCD's purported tender was invalid, in part, because it was "inappropriate for [CUWCD] to tender money instead of its agreed-upon performance obligations." We review the district court's ruling for "correctness, giving no deference to [its] decision," *Bahr v. Imus*, 2011 UT 19, ¶ 16, 250 P.3d 56, and agree that CUWCD could not "tender" substitute performance for its original contractual obligations.

¶34    CUWCD relies on *PDQ Lube Center, Inc. v. Huber* to argue that its offer of substitute performance constituted a valid tender. 949 P.2d 792 (Utah Ct. App. 1997). The court in *PDQ Lube Center* stated that, "[i]n order to be valid, tender of payment on a contract must be (1) timely, (2) made to the person entitled to payment, (3) unconditional, (4) an offer to pay the amount of money due, and (5) coupled with an actual production of the money or its equivalent." *Id.* at 800 (internal quotation marks omitted).

¶35    CUWCD's invocation of *PDQ Lube Center* is misplaced because, "[b]y definition, [a valid] tender requires the holding out of that which is to be delivered or performed before the condition is satisfied." 13 CORBIN ON CONTRACTS § 67.5 (Rev. ed. 2003). In other words, "[t]he tender must be made in accordance with the terms of the contract, or it is no tender at all." 17B C.J.S. *Contracts* § 735 (2013) (footnotes omitted). For an offer to constitute a tender (valid or otherwise), "[t]he tenderer must do and offer everything that is necessary on his or her part to complete the transaction." *Id.*

¶36    Before CUWCD can establish that the Canal Companies waived any objections to CUWCD's purported tender, "[CUWCD] must [have made] an unconditional tender *of the performance required by the agreement*." *Kelley v. Leucadia Fin. Corp.*, 846 P.2d 1238, 1243 (Utah 1992) (emphasis added). "In other words, a party must make a tender of his own agreed performance in order to put the other party in default." *Id.* (internal quotation marks omitted); *see also Collard v. Nagle Constr., Inc.*, 2002 UT App 306, ¶ 19, 57 P.3d 603 (concluding that a party is entitled to an equitable remedy under the tender doctrine only if it has "fully tendered, or stood ready to fully tender, [its] own performance under the contract").

¶37    Here, CUWCD agreed to "remove and replace at its sole expense TCC's existing diversion structure and replace it with a new radial gate and other appurtenant facilities." It did not agree to pay a sum to the Canal Companies so that the Canal Companies could replace the TCC Diversion themselves. CUWCD did not, therefore, tender the performance due under the Agreement. Rather, CUWCD tendered a cash payment as an alternative. In the face of the explicit requirements of performance under the Agreement, CUWCD's cash offer was not a tender at all. Rather, it is more appropriately characterized as a settlement offer. And there is no authority to support the novel proposition that a party's failure to object to a settlement offer can be deemed an acceptance of that offer.

¶38    In summary, the Canal Companies were not obligated to

object to CUWCD's settlement offer. The district court correctly ruled that CUWCD's purported tender was ineffectual.

## IV. THE DISTRICT COURT DID NOT ERR WHEN IT GRANTED SUMMARY JUDGMENT IN FAVOR OF UEU AND ERB

¶39    CUWCD argues, in a cursory fashion, that the district court erred when it certified its summary judgment rulings as final under rule 54(b). CUWCD's briefing on this issue is confusing, however, in that CUWCD's argument is labeled as a challenge to the propriety of the grant of summary judgment, but proceeds as a mixture of rule 54(b) and summary judgment analyses.

¶40    Although CUWCD purports to challenge the rule 54(b) certification, it cites to only one case, *Kennecott Corporation v. Utah State Tax Commission*, 814 P.2d 1099 (Utah 1991), in support of that proposition. In *Kennecott,* a group of taxpayers brought an action alleging that a section of the Utah Code was unconstitutional. *Id.* at 1099–1100. The taxpayers brought three separate constitutional challenges, and the district court granted partial summary judgment in favor of the state tax officials as to one of the three. *Id.* at 1100. The court then certified its partial summary judgment ruling as a final judgment pursuant to rule 54(b) and the taxpayers appealed. *Id.* We held that such certification was improper if substantial factual overlap exists between the claims certified as final and the claims remaining before the district court. *Id.* at 1104

¶41    CUWCD argues that such a factual overlap exists in this case. We disagree. In *Kennecott*, the claims remaining before the district court involved all of the same parties, covered exactly the same set of operative facts, and requested the exact same remedy as the claims certified as final. *Id.* at 1105. Because of the significant overlap in terms of parties and issues, we noted that one important factor in determining whether 54(b) certification is proper is the res judicata effect of any appellate decision on the claims remaining before the district court. *Id.* at 1104. Thus, if the facts underlying a claim certified as final under rule 54(b) "are sufficiently similar to constitute res judicata on the remaining issues, 54(b) certification is generally precluded." *Id.* at 1105.

¶42    In nearly every respect, this case is distinguishable from *Kennecott.* First, as detailed below, the district court disposed of UEU and ERB's claims in their entirety on summary judgment. As such, they no longer have any claims pending before the district court. Accordingly, the district court's 54(b) certification fundamentally altered the makeup of the parties before it. Second, the parties

in this case seek separate and distinct remedies for CUWCD's breach of contract. As noted below, UEU and ERB have gone without a reconstructed Diversion for nearly a decade. They are entitled to recovery regardless of the district court's disposition of TCC's damages claim. Finally, as detailed below, resolution of UEU and ERB's claims on appeal will have no res judicata effect on TCC's remaining claim for damages. Thus, the district court did not err in granting rule 54(b) certification. We now consider the propriety of the district court's grant of summary judgment on UEU's and ERB's claims.

¶43   CUWCD argues that the district court erred in granting summary judgment in favor of UEU and ERB because (1) CUWCD's alleged breach will be resolved when the court resolves the reserved issues in its action with TCC, (2) the court failed to address all of the issues raised in CUWCD's complaint, and (3) the court failed to address CUWCD's claim for quantum meruit. "In considering a grant of summary judgment, we review the [district] court's legal decision for correctness." *Peterson v. Coca-Cola USA*, 2002 UT 42, ¶ 7, 48 P.3d 941 (internal quotation marks omitted). We disagree with CUWCD on all counts and conclude that the district court correctly ruled in favor of UEU and ERB on summary judgment.

*A. Resolution of the Reserved Issues with Respect to TCC Does Not Resolve or Remedy UEU and ERB's Claims*

¶44   CUWCD contends that the district court erred in granting summary judgment in favor of UEU and ERB because CUWCD's claimed default on its obligations to UEU and ERB will somehow be extinguished when the district court awards a remedy to TCC. Specifically, CUWCD contends that if the district court orders specific performance or compensatory damages, that order will make TCC whole and thus satisfy CUWCD's obligations to all of the Canal Companies. We disagree.

¶45   As previously explained, UEU and ERB did not receive the benefit of their bargain because CUWCD failed to replace the TCC Diversion. *See supra* Section I. And CUWCD owed an independent duty to UEU and ERB to do so. *Supra* Section I. UEU and ERB are therefore independently entitled to damages for CUWCD's breach, regardless of whether the district court ultimately awards damages to TCC as well.

¶46   We are similarly unpersuaded by CUWCD's argument that UEU and ERB's claims for damages would be mooted if the district court were to order specific performance. In the first place, such an

argument is wholly speculative and inconsistent with CUWCD's position that construction of the TCC Diversion is impracticable.[3] And in any event, any future construction of the contemplated Diversion would not remedy the fact that UEU and ERB have gone without the reconstructed Diversion for almost a decade. Finally, as a legal matter, UEU and ERB's claims for damages are separate and distinct from TCC's claim for damages. They should not be denied recovery simply because the district court has yet to award TCC a remedy.

### B. *The Explicit Terms of the Agreement Control the Disposition of the Improved Piping*

¶47 CUWCD next argues that the district court erred by granting summary judgment because its ruling did not address CUWCD's requested declaratory relief regarding ownership of the improved piping that CUWCD installed pursuant to the Agreement. CUWCD contends that the district court erroneously left title to the improved piping in CUWCD, "effectively impos[ing] ongoing costs and an indefinite statutory liability on the District." In response, UEU and ERB argue that because CUWCD substantially completed the piping portion of the project, the Agreement requires that CUWCD return title to UEU and ERB. We agree.

¶48 To facilitate the improvements to the piping contemplated under the Agreement, the Agreement specifies how title to the piping is to be held during construction. Specifically, the Agreement states that "[b]efore CUWCD can expend its funds in the construction of this pipeline, [UEU and] ERB must convey title to the canal and its right of way and all appurtenances to CUWCD." Similarly, the Agreement specifies the timing for reconveyance. It states that "[t]itle to the canal, right of way, and all appurtenances shall be reconveyed from CUWCD to ERB [and UEU] *upon substantial completion of the pipeline.*" (Emphasis added).

¶49 On appeal, CUWCD argues that it was erroneous for the district court to award summary judgment without addressing its

---

[3] Specific performance is not typically ordered if damages are sufficient to protect the injured party's expectation interest. RESTATEMENT (SECOND) OF CONTRACTS § 359 (1981). Indeed, there is a strong preference in the common law against ordering specific performance. Assuming the district court enters a monetary judgment against CUWCD in favor of TCC, TCC has no legal obligation to use the judgement funds to replace the TCC Diversion.

claims regarding title to the piping. But it was not necessary for the district court to address these title claims because they were never in dispute before the district court. CUWCD's attempts to raise the title issues on appeal in the first instance are futile inasmuch as the plain and uncontroverted language of the Agreement gives CUWCD no legal claim to title of the improved piping. The Agreement clearly states that upon substantial completion of the contracted-for improvements to the piping, as opposed to completion of the project in its entirety, CUWCD is contractually obligated to reconvey title of the piping to UEU and ERB. CUWCD concedes that it substantially completed the piping improvements almost nine years ago. Because CUWCD is contractually obligated to reconvey the piping under the terms of the Agreement and because the title issue was never raised in the district court, the district court's summary judgment in favor of the Canal Companies was appropriate.

## C. CUWCD Is Not Entitled to Recover in Quantum Meruit

¶50  Finally, CUWCD argues that summary judgment in favor of the Canal Companies was inappropriate because the district court failed to address CUWCD's asserted entitlement to recover in quantum meruit. It further argues that it was not required to explicitly plead its claim for quantum meruit "because there is no requirement to plead quantum meruit where a breach of contract claim is plead [*sic*]" and its asserted entitlement did not arise until the district court issued its ruling. UEU and ERB counter that CUWCD failed to preserve its quantum meruit claim in the district court and that it is barred from recovering in quantum meruit because such a claim is awardable only in the absence of an enforceable written or oral contract.

¶51  We do not generally consider an issue on appeal unless it has been preserved below. "An issue is preserved for appeal when it has been presented to the district court in such a way that the court has an opportunity to rule on it." *Patterson v. Patterson*, 2011 UT 68, ¶ 12, 266 P.3d 828 (internal quotation marks omitted). "To provide the court with this opportunity, the issue must be specifically raised by the party asserting error, in a timely manner, and must be supported by evidence and relevant legal authority." *State ex rel. D.B. v. State*, 2012 UT 65, ¶ 17, 289 P.3d 459 (internal quotation marks omitted).

¶52  Here, CUWCD concedes that it did not initially plead quantum meruit, but argues that it was "neither necessary nor

appropriate for [CUWCD] to plead quantum meruit until the [district] court issued its [r]uling." Additionally, CUWCD cites to *Parents Against Drunk Drivers v. Graystone Pines Homeowners' Association* for the proposition that "[a]n allegation of breach of contract is sufficient to support a quantum meruit claim." 789 P.2d 52, 57 n.8 (Utah Ct. App. 1990).

¶53 We are unpersuaded. In *Parents Against Drunk Drivers*, although the plaintiff did not plead a claim of quantum meruit in his complaint, "he did raise the claim in opposing the motion for partial summary judgment filed with the trial court." *Id.* In so doing, the plaintiff "presented [the issue] to the district court in such a way that the court ha[d] an opportunity to rule on it." *Patterson*, 2011 UT 68, ¶ 12 (internal quotation marks omitted). In contrast, CUWCD never raised the issue until after the district court had entered its ruling.

¶54 Moreover, CUWCD never alleged that the other parties to the Agreement breached their contractual obligations. *See Parents Against Drunk Drivers*, 789 P.2d at 57 n.8. Rather, it was the Canal Companies that asserted a breach by CUWCD. CUWCD's reliance on *Parents Against Drunk Drivers* is therefore misplaced. Because CUWCD failed to preserve its quantum meruit argument before the district court, we decline to consider it now.

## V. THE DISTRICT COURT HAD NO OBLIGATION TO RECONSIDER ITS RULING

¶55 Following the district court's entry of summary judgment in favor of the Canal Companies, CUWCD filed a motion to reconsider, arguing that the district court's entry of summary judgment in favor of the Canal Companies was improper because there were disputed material facts and the ruling resulted in an unconscionable forfeiture by CUWCD. The district court ruled that CUWCD's "motion to reconsider is not cognizable under Utah law," and that CUWCD cannot "ask [it] to revisit its previous ruling because [CUWCD] believes it now has new and better arguments." CUWCD argues that the district court abused its discretion in failing to grant its motion to reconsider. Until the district court issues a final order or certifies an order for immediate appeal under rule 54(b), the question of whether to grant or deny a motion to reconsider a prior ruling is within its sound discretion, and we will not disturb such a ruling absent an abuse of that discretion. *U.P.C., Inc. v. R.O.A. Gen., Inc.*, 1999 UT App 303, ¶ 57, 990 P.2d 945.

¶56 The district court did not abuse its discretion when it

denied CUWCD's motion to reconsider. The district court denied CUWCD's motion on the grounds that CUWCD offered no new and previously unavailable information.[4] A district court is not required to reconsider its previous rulings merely because a party wishes to present different arguments, based on previously known facts, following an adverse ruling by the court. We therefore conclude that the district court did not err when it refused to grant CUWCD's motion to reconsider.

## VI. THE DISTRICT COURT DID NOT ERR BY REFUSING TO ALLOW CUWCD TO AMEND ITS COMPLAINT

¶57 Finally, CUWCD asserts that the district court abused its discretion when it did not allow CUWCD to amend its complaint to join URMCC and DOI as parties to the lawsuit. "A trial court's determination of whether a party should be joined to an action will not be disturbed absent an abuse of discretion." *Green v. Louder*, 2001 UT 62, ¶ 40, 29 P.3d 638. We hold that the district court did not abuse its discretion because URMCC and DOI were not necessary parties.

¶58 Rule 19 of the Utah Rules of Civil Procedure establishes a two-part procedure to determine whether joinder is required. "First, the court must ascertain whether a party has sufficient interest in the action to make it a necessary party. Second, if the court . . . deems the party necessary to the action, and joinder is unfeasible, the court must then determine whether the party is indispensable." *Mower v. Simpson*, 2012 UT App 149, ¶ 27, 278 P.3d 1076 (internal quotation marks omitted); *see also Landes v. Capital City Bank*, 795 P.2d 1127, 1130 (Utah 1990). But a court is required to address indispensability under rule 19(b) only if it first finds that joinder of the party is necessary. *Johnson v. Higley*, 1999 UT App 278, ¶ 29, 989 P.2d 61.

¶59 Rule 19(a) defines a necessary party as one in whose "absence complete relief cannot be accorded" or one necessary to prevent those existing parties from "incurring double, multiple, or otherwise inconsistent obligations." The motivation for "requiring

---

[4] CUWCD did proffer an additional affidavit from Daryl Devey, an O&M Manager for CUWCD. This affidavit was offered to correct certain facts relating to the functioning of the existing TCC Diversion. However, as the district court correctly noted, any new facts relating to the existing TCC Diversion are irrelevant. The contract at issue required CUWCD to construct a new Diversion, which it did not do.

joinder of necessary parties is to protect the interests of absent persons as well as those already before the court from multiple litigation or inconsistent judicial determinations." *Grand Cnty. v. Rogers*, 2002 UT 25, ¶ 28, 44 P.3d 734 (internal quotation marks omitted).

¶60    In *Gedo v. Rose*, the court of appeals held that a father was a necessary party under rule 19 because the "action [sought] to divest [the non-party] Father of his parental rights." 2007 UT App 154, ¶ 7, 163 P.3d 659. Because there was potential that a judgment could lead to an unrepresented party being deprived of his rights, and joinder of the father would not deprive the court of its underlying jurisdiction, the court determined that joinder was necessary. Conversely, in *Johnson v. Higley*, the court held that joinder of joint owners of property was unnecessary because liability could only be imputed to the named defendant. 1999 UT App 278, ¶ 30. The court found that while the plaintiff may have had claims against other defendants, the plaintiff's claims in that case "were expressly limited" to the named defendant's acts or omissions. *Id.* ¶ 33. Therefore the joint property owners "suffered no risk of future prejudice" because the named defendant "could not later seek contribution" and the plaintiff "could not impose multiple or inconsistent obligations through a later suit." *Id.*

¶61    Here, CUWCD asserts that the district court abused its discretion by refusing to allow it to join URMCC and DOI as necessary parties. It argues that joinder of these parties was necessary because the project was intended "to benefit, in part, federal purposes." Specifically, CUWCD contends that "URMCC and DOI were the real parties in interest with the District with regard to the water rights, and the intended uses of the water represented by those rights, and their joinder was necessary to prevent multiple litigation and contradictory claims over ownership of the water rights."

¶62    Although CUWCD contends that "all parties understood" that the intended purpose of the project was to benefit these federal entities, it offered no evidence to substantiate its assertion. And even assuming that this was the general understanding of all parties, CUWCD offered no evidence that URMCC or DOI have any present interests in the water rights, vested future interests in the water rights, or interest in any unvested water rights. In short, there is nothing to suggest that failure to join the DOI and URMCC will lead to the deprivation of their rights. Accordingly, they are not necessary parties and our analysis of rule 19 need not continue

further. *Id.* ¶ 29 ("Only if the party is necessary, but the court finds joinder unfeasible, must the court address indispensability under [r]ule 19(b).").

¶63    Because neither DOI nor URMCC are necessary parties, the district court did not abuse its discretion when it denied CUWCD's motion to amend its complaint.

## CONCLUSION

¶64    CUWCD materially breached its obligation to replace the TCC Diversion. That breach was not excused under the doctrine of impracticability or by CUWCD's purported tender. Nor did CUWCD preserve its quantum meruit claim. The district court therefore appropriately entered summary judgment in favor of UEU and ERB and appropriately denied CUWCD's request to reconsider. Finally, the district court did not abuse its discretion when it refused to allow CUWCD to amend its complaint to add additional parties. We therefore affirm the judgment of the district court in all respects.